# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| ISAAC KIGONDU KINITI, | CASE NO. 05cv1013 DMS (PCL) |
|---|---|
| Plaintiff, vs. JULIE L. MEYERS, et al., Defendants. | **ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |

This matter comes before the Court on Defendants' motions to dismiss Plaintiffs' Second Amended Complaint ("SAC"). The matter has been fully briefed and argued. Having carefully considered the papers submitted and the argument of counsel, the Court grants in part and denies in part Defendants' motions.

**I.**

**BACKGROUND**

The facts of this case are well known to the parties. Therefore, the Court sets forth only those facts relevant to the present motion.

Plaintiffs have filed suit alleging serious overcrowding at the San Diego Correctional Facility (SDCF) dating back to at least November 2004. Plaintiffs include Isaac Kigondu Kiniti, Jose Morales-Vargas, Sylvester Owino, Hernan Ismael Delgado, and Any Castro. Of these Plaintiffs, only Kiniti and Owino currently are detained at the SDCF. The remaining Plaintiffs have been removed or

1  transferred: Castro was deported to Honduras on February 1, 2007, Morales-Vargas was deported to
2  Guatemala on May 11, 2007, and Delgado was transferred from SDCF to El Centro, California on
3  February 16, 2007.  Based on changes that Defendants made to the housing conditions challenged by
4  Plaintiffs in this lawsuit and the relocation of Plaintiffs Castro, Morales-Vargas and Delgado,
5  Defendants move to dismiss the SAC as moot.
6       The SAC alleges a violation of the Due Process Clause under the Fifth Amendment of the
7  United States Constitution due to "chronic and severe overcrowding."  It alleges:

> Defendants' policies, practices, acts, and omissions with respect to chronic and severe overcrowding at SDCF – including but not limited to the triple-celling of immigration detainees and the housing of additional detainees in common day room spaces – deprive plaintiffs of adequate shelter, reasonable safety, and basic human needs, and place them at unreasonable, continuing and foreseeable risk of, *inter alia*, increased violence, illness, mental suffering, and deteriorating health.

12 SAC at ¶ 111.  According to the SAC, "triple-celling" occurs when three detainees are housed in a cell
13 designed for two.  When this happens, a plastic "boat" containing a thin sleeping mat is placed on the
14 floor for the third detainee to sleep on.  *Id.* at ¶ 54.  Plaintiffs allege this practice affects about 675 of
15 the approximately 1000 detainees at SDCF.  *Id.* at ¶ 2.  In addition to triple-celling, some detainees are
16 housed in "makeshift beds placed in the common day room space."  *Id.* at ¶ 41.  Holding cells and
17 administrative segregation units are also overcrowded.  *Id.* at ¶¶ 75-79.  "A typical holding cell"
18 provides just enough space for 12 detainees to sleep in a row on the floor, side-by-side, touching each
19 other, "like sardines."  *Id.* at ¶76.  Administrative segregation is used to house "overflow detainees"
20 and "detainees who refuse to be triple-celled."  *Id. at ¶ 78.*  Segregated detainees are confined in their
21 cells for 23 to 24 hours per day and are required to eat all meals in their cells.  *Id.* at ¶ 79.  They are
22 provided only one hour out-of-cell for exercise, five days per week, in a small cement yard surrounded
23 by a chainlink fence.  *Id.*
24      Based upon these allegations, the SAC seeks judgment: (1) declaring that such policies
25 "violate plaintiffs' rights under the Constitution," and (2) permanently enjoining Defendants "from
26 subjecting plaintiffs to the unconstitutional conditions."  *Id.*, "Prayer for Relief" (c)(d).
27 / / /
28 / / /

## II.

## LEGAL STANDARD

**A.     <u>12(b)(1)</u>**

"Because standing and mootness both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)." [1] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citations omitted). A rule 12(b)(1) challenge can be either facial or factual. *Id.* With a facial attack, a defendant may argue the allegations on the face of the complaint are insufficient to show federal subject matter jurisdiction. *See Warren v. Fox Family Wordwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). As with a Rule 12(b)(6) motion, the court must treat the allegations in the complaint as true and draw all inferences in favor of the plaintiff. *See Gould v. U.S.*, 220 F.3d 169, 176 (3rd Cir. 2000). With a factual attack, however, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In reviewing the challenge, the court may consider and weigh evidence outside the pleadings without converting the motion into a motion for summary judgment. *Id.* (citations omitted); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). The Court need not presume the truthfulness of the plaintiff's allegations. *Id.* Once the moving party has presented affidavits or other evidence supporting its motion, the non-moving party must furnish evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Id.*

**B.     <u>Standing -- Mootness</u>**

"The jurisdiction of federal courts depends on the existence of a 'case or controversy' under Article III of the Constitution." *GTE California, Inc. v. Federal Communications Comm'n*, 39 F.3d 940, 945 (9th Cir. 1994). An actual controversy must exist at every stage of the litigation. *See Roe v. Wade*, 410 U.S. 113, 125 (1973). "In general a case becomes moot 'when the issues presented are

---

[1] Two motions are at issue: one filed by Defendants Corrections Corporation of America, Inc. ("CCA"), Easterling and Howard, and the other by the remaining defendants. Both motions challenge subject matter jurisdiction based on mootness. CCA, Easterling and Howard move to dismiss under Rule 12(b)(6), while the remaining defendants move to dismiss under Rule 12(b)(1). Because mootness questions concern subject matter jurisdiction, the Court will construe the 12(b)(6) motion as a 12(b)(1) motion.

1  no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455
2  U.S. 478, 481 (1982). In other words, a case is moot if the issues presented are no longer of any direct
3  concern to the parties, and the Court would merely be resolving a hypothetical question. Where a
4  defendant asserts the "question sought to be adjudicated has been mooted by subsequent
5  developments," *Flast v. Cohen*, 392 U.S. 83, 96 (1968), it bears the burden of proof. *Mangual v.
6  Rotger-Sabat*, 317 F.3d 45, 60 (1st Cir. 2003) ("[T]he burden of establishing mootness rests squarely
7  on the party raising it.").

## III.

## DISCUSSION

10  Defendants mount a factual jurisdictional challenge, contending (1) Morales-Vargas, Delgado
11  and Castro's claims are moot because they are no longer detained at SDCF; and (2) although Kiniti
12  and Owino remain at the facility, their claims are moot because the conditions they challenge no
13  longer exist.

### A.   Morales-Vargas, Delgado and Castro

15  Defendants argue the claims of Morales-Vargas, Delgado and Castro are moot because
16  Morales-Vargas and Castro have been deported, and Delgado was transferred to another facility. CCA
17  Mot. to Dismiss, at 6-7. A case "becomes moot 'when the issues presented are no longer 'live' or the
18  parties lack a legally cognizable interest in the outcome." *Murphy*, 455 U.S. at 481. Because Castro
19  and Morales-Vargas have been deported, neither has a cognizable interest in the outcome of this
20  litigation. Plaintiffs do not argue otherwise. Accordingly, their claims are dismissed.

21  With respect to Delgado, Plaintiffs argue his claim falls under the "capable of repetition, yet
22  evading review" exception to the mootness doctrine. *Id.* at 13. This exception provides that a named
23  plaintiff may litigate class certification even though he has no personal stake in the outcome of the
24  litigation. *U.S. Parole Commission v. Geraghty*, 445 U.S. 388, 398 (1980). The exception applies
25  where the named plaintiff had a personal stake at the outset of the litigation, and the claim may arise
26  again with respect to that plaintiff. *Id.* Here, Plaintiffs have established a reasonable expectation that
27  Delgado may be transferred back to SDCF. Delgado remains in ICE custody and is being held at the
28  El Centro Service Processing Center. It is not uncommon for detainees to be transferred back and

forth between SDCF and El Centro. Kiniti Decl. ¶ 9. Indeed, Plaintiff Kiniti and others have been transferred between the two facilities on several occasions. *Id.* ¶¶ 2-5. Delgado has therefore demonstrated that his claim is "capable of repetition, yet evading review." The motion is denied as to Delgado.

### B.     Kiniti and Owino

The SAC alleges Plaintiffs are subject to a condition of chronic overcrowding arising from: (1) triple-celling; (2) the housing of some detainees in makeshift beds in common day room space; (3) overcrowded holding cells; and (4) the housing of overflow detainees in an administrative segregation unit. ICE Mot. to Dismiss, at 3.

Defendants contend Kiniti and Owino's claims are moot because the conditions they challenge no longer exist and are unlikely to recur. In support, Defendants submit declarations from Easterling and Timothy L. Perry, Deputy Assistant Director for Detention Management for the Office of Detention and Removal Operations. Both affiants have informed the Court that SDCF has been operating below capacity since January 28, 2007, and the allegedly wrongful conduct no longer exists. On January 27, 2007, shortly after the SAC was filed, ICE directed CCA to prepare 104 detainees for deportation and/or transfer to other facilities. Easterling Decl., at ¶ 10. That discharge negated the need to continue any of the practices challenged in the SAC. *Id.* at ¶ 11. Thus, no ICE detainees are currently triple celled; SDCF "has refrained from using 'boats' since January 28, 2007;" no immigration detainees have been held in a holding cell for longer than 12 hours; and "no immigration pod, administrative segregation unit or ICE holding cell has exceeded capacity." Easterling Decl. at ¶ 28; Perry Decl. at ¶¶ 19-20; 25-26. In addition, as of May 1, 2007, only 11 detainees were housed in the common day room, and these assignments are "temporary," usually not exceeding 24 hours while appropriate housing is being determined. Perry Decl. At ¶¶ 22 and 23; Easterling Decl., ¶ 31. Perry states, given population levels between 575 and 692 detainees per day, that he has "no reasonable expectation" that any of the alleged conduct will recur. Perry Decl., at ¶¶ 17, 26.

Defendants, however, have failed to satisfy their heavy burden of demonstrating it is "*absolutely* clear that the allegedly wrongful conduct could not reasonably be expected to recur." *Carlton v. United Academics-AAUP/AFT/APEA AFL-CIO*, 265 F.3d 778, 786 (9th Cir. 2001)

(emphasis in original).  Defendants' burden of persuasion is "stringent."  *Friends of the Earth, Inc.v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).  This heavy burden is met where, for example, a defendant acknowledges in writing that the challenged conduct is unlawful and provides assurances the offending conduct will not be repeated.  *See Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1095 (9th Cir. 2003) (It is "unreasonable to think" defendant "would return to conduct it has admitted to this court is constitutionally deficient.").  *See also Carlton*, 265 F.3d at 780 ("It is unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient and had attempted to correct ...").

In contrast, Defendants here have not acknowledged, in writing or otherwise, that the challenged conduct is wrong or that overcrowding ever was a problem at SDCF.  Nor have they stated they would not reinstate the practices in question.  In fact, Defendants dispute whether triple-celling is unconstitutional and maintain such practices do "not result in a violation of Plaintiffs' civil rights."  CCA Mot. to Dismiss, at 5, n.1.  Under these circumstances, Defendants' representation that no detainees are currently being triple-celled and they do not expect such to recur, is insufficient to render the controversy moot.

## IV.
## CONCLUSION

Defendants' motions to dismiss the SAC are granted in part and denied in part as set forth above.

**IT IS SO ORDERED.**

DATED: June 21, 2007

_____
HON. DANA M. SABRAW
United States District Judge

cc: all parties;
Judge Lewis